# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
ESSEX COUNTY
-----------------------------------------------------------------------X
BIRCH PARK LLC UTILITIES,

*Plaintiff,*

*-against -*

AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S. INC., BASF CORPORATION, individually and as successor in interest to Ciba Inc., BUCKEYE FIRE EQUIPMENT COMPANY, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, individually and as successor in interest to Sandoz Chemical Corporation, DEEPWATER CHEMICALS, INC., DYNAX CORPORATION, NATION FORD CHEMICAL COMPANY, and TYCO FIRE PRODUCTS, LP, individually and as successor in interest to The Ansul Company, and DOE DEFENDANTS 1-20, fictitious names whose present identities are unknown,

*Defendants.*
-----------------------------------------------------------------------X

Index No. _________/2024

**SUMMONS**

Trial by jury is desired in the County of ESSEX

Venue is designated pursuant to CPLR § 503(a) & (c) in that THE CAUSE OF ACTION TOOK PLACE in this county.

To the above-named Defendant:

You are hereby summoned to answer the Complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiffs' attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty (30) days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
September 16, 2024

**NAPOLI SHKOLNIK**

*/s/ Andrew W. Croner*
Andrew Croner, Esq.
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
acroner@napolilaw.com

*Attorney for* Plaintiff/Plaintiffs

To:

AGC CHEMICALS AMERICAS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

AMEREX CORPORATION
c/o James M. Proctor II
2900 Highway 280
Suite 300
Birmingham, AL 35223

ARCHROMA U.S. INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

ARKEMA INC.
900 First Avenue
King of Prussia, PA 19406

BASF CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

BUCKEYE FIRE EQUIPMENT COMPANY
c/o A Haon Corporate Agent, Inc.
29225 Chagrin Blvd, Suite 350

Pepper Pike, OH 44122

CHEMDESIGN PRODUCTS INC.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE, 19808

CHEMGUARD INC.
c/o The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, New Castle, DE, 19808

CHEMICALS, INC.
c/o Ashok K. Moza
12321 Hatcherville
Baytown, TX 77520

CLARIANT CORPORATION
c/o Corporation Service Company
251 Little Falls Drive,
Wilmington DE 19808-1674

DEEPWATER CHEMICALS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DYNAX CORPORATION
c/o Corporate Systems LLC
3500 S. Dupont Highway
Dover, DE 19901

NATION FORD CHEMICAL COMPANY
c/o John A. Dickson, IV
2300 Bank Street
Fort Mill, SC 29715

TYCO FIRE PRODUCTS LP
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street

Wilmington, DE 19801

SUPREME COURT OF THE STATE OF NEW YORK
ESSEX COUNTY
--------------------------------------------------------------------X
BIRCH PARK LLC UTILITIES,

*Plaintiff,*

-*against* -

AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S. INC., BASF CORPORATION, individually and as successor in interest to Ciba Inc., BUCKEYE FIRE EQUIPMENT COMPANY, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, individually and as successor in interest to Sandoz Chemical Corporation, DEEPWATER CHEMICALS, INC., DYNAX CORPORATION, NATION FORD CHEMICAL COMPANY, and TYCO FIRE PRODUCTS, LP, individually and as successor in interest to The Ansul Company, and DOE DEFENDANTS 1-20, fictitious names whose present identities are unknown,

*Defendants.*
--------------------------------------------------------------------X

Index No. _________/2024

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Trial by jury is desired in the County of ESSEX

Venue is designated pursuant to CPLR § 503(a) & (c) in that THE CAUSE OF ACTION TOOK PLACE in this county.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff BIRCH PARK LLC UTILITIES (“Plaintiff”), by and through its undersigned counsel, hereby files this Complaint against Defendants, AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S. INC., BASF CORPORATION, BUCKEYE FIRE EQUIPMENT COMPANY, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, DEEPWATER CHEMICALS, INC., DYNAX CORPORATION, NATION FORD CHEMICAL COMPANY, and TYCO FIRE PRODUCTS, LP, and DOE DEFENDANTS 1-20, fictitious names

whose present identifies are unknown (collectively "Defendants") and alleges, upon information and belief, as follows:

## INTRODUCTION

1. This action arises from the foreseeable contamination of groundwater by the use of aqueous film-forming foam ("AFFF") products that contained per- and poly-fluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA").

2. PFOA is a fluorosurfactant that repels oil, grease, and water. PFOA, and/or its chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3. PFOA is mobile, persists indefinitely in the environment, bioaccumulates in individual organisms and humans, and biomagnifies up the food chain. PFOA is also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4. At various times from the 1970s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOA, and/or its chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluorinated chemicals ("PFCs") contained in AFFF (collectively, "AFFF/Component Products").

5. Defendants designed, manufactured, marketed, distributed, and/or sold AFFF/Component Products despite knowing that PFAS are toxic, persist indefinitely, and would be routinely released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants.

6. Since its creation in the 1970s, AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants, and/or that contained fluorosurfactants and/or PFCs designed, manufactured, marketed, distributed, and/or sold by Defendants, was sold to the military, fire training facilities, fire departments or airports in the area near Plaintiff's water system, which used it as directed and intended by Defendants, and subsequently released it into the environment during fire protection, training, and response activities, resulting in widespread PFAS contamination.

7. Plaintiff is the owner and operator of a water system serving approximately 90 residents located in and around Lake Placid, NY.

8. Plaintiff's system draws the drinking water it provides to customers from two groundwater wells.

9. Plaintiff has detected PFAS in its groundwater wells.

10. On information and belief, the PFAS contamination described above is a direct and proximate result of fire protection, training, and response activities in the area near Plaintiff's water system, resulting in the migration of PFAS into Plaintiff's water supply.

11. In order to ensure that it can continue to provide clean and safe water to residences, Plaintiff has and will continue to take actions to address the above contamination of its property and its potable water supply caused by the Defendants.

12. Such actions include but are not limited to additional testing and monitoring for PFAS; planning, designing, purchasing, installing, and maintaining water filtration systems to remove these chemicals; infrastructure modifications; contingency planning; and community outreach.

13. Due to the persistent and long-term nature of PFAS contamination, Plaintiff is expected to suffer damages and incur the costs associated with these and other ongoing necessary remedial actions for many years to come.

14. Through this action, Plaintiff seeks compensatory damages for the harm done to its property and the costs associated with investigating, remediating, and monitoring its drinking water supplies contaminated with PFAS due to the use of AFFF in the area near Plaintiff's water system.

**JURISDICTION AND VENUE**

15. Upon information and belief, this Court has personal jurisdiction over Defendants because each of them is doing business in New York by manufacturing, distributing, producing and marketing products, services and/or materials in this State and/or to this State.

16. At all relevant times to the Complaint, Defendants conducted business in New York and thereby availed themselves of the legal rights in New York.

17. Defendants have had systematic and continuous commercial contacts with New York to establish jurisdiction over them pursuant to CPLR § 302.

18. This Court has personal jurisdiction over the defendants as each of them are doing business in New York and engage in business in New York such that it is reasonably foreseeable that they would be subject to the jurisdiction of the courts of this State.

19. Plaintiff is a corporation of the state of New York, wholly located within Essex County.

**PARTIES**

**A. Plaintiff**

20. Plaintiff is a corporation organized under the laws of the State of New York, with its principal place of business located at 11 Haystack Way, Lake Placid, NY 12946.

**B. Defendants**

21. The term "Defendants" refers to all Defendants named herein jointly and severally.

i. The AFFF Defendants

22. The term **"AFFF Defendants"** refers collectively to Defendants Amerex Corporation, Buckeye Fire Equipment Company, Chemguard Inc., and Tyco Fire Products L.P.

23. **Defendant Amerex Corporation ("Amerex")** is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, AL 35173.

24. Amerex is a manufacturer of firefighting products. Beginning in 1971, it was a manufacturer of hand portable and wheeled extinguishers for commercial and industrial applications.

25. In 2011, Amerex acquired Solberg Scandinavian AS, one of the largest manufacturers of AFFF products in Europe.

26. On information and belief, beginning in 2011, Amerex designed, manufactured, marketed distributed, and sold AFFF containing PFAS, including but not limited to PFOA.

27. **Defendant Tyco Fire Products LP ("Tyco")** is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143-2542.

28. Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

29. Beginning in or around 1975, Ansul designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA.

30. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to design, manufacture, market, distribute, and sell AFFF products containing PFAS, including but not limited to PFOA.

31. **Defendant Chemguard, Inc. ("Chemguard")** is a corporation organized under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143.

32. On information and belief, Chemguard designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA.

33. On information and belief, Chemguard was acquired by Tyco International Ltd. in 2011.

34. On information and belief, Tyco International Ltd. later merged into its subsidiary Tyco International plc in 2014 to change its jurisdiction of incorporation from Switzerland to Ireland.

35. **Defendant Buckeye Fire Equipment Company ("Buckeye")** is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

36. On information and belief, Buckeye designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA.

37. On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and sold AFFF products containing PFOA, and/or its chemical precursors that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed in the vicinity of Plaintiff's drinking water supply.

ii. The Fluorosurfactant Defendants

38. The term **"Fluorosurfactant Defendants"** refers collectively to Defendants Arkema Inc., BASF Corporation, ChemDesign Products Incorporated, Chemguard Inc., Deepwater Chemicals, Inc., and Dynax Corporation.

39. **Defendant Arkema Inc.** is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 900 First Avenue, King of Prussia, PA 19406.

40. Arkema Inc. develops specialty chemicals and polymers.

41. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

42. On information and belief, Arkema Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

43. **Defendant BASF Corporation ("BASF")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 100 Park Avenue, Florham Park, New Jersey 07932.

44. On information and belief, BASF is the successor-in-interest to Ciba. Inc. (f/k/a Ciba Specialty Chemicals Corporation).

45. On information and belief, Ciba Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

46. **Defendant ChemDesign Products Inc. ("ChemDesign")** is a corporation organized under the laws of Delaware, with its principal place of business located at 2 Stanton Street, Marinette, WI, 54143.

47. On information and belief, ChemDesign designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

48. **Defendant Deepwater Chemicals, Inc. ("Deepwater")** is a corporation organized under the laws of Delaware, with its principal place of business located at 196122 E County Road 40, Woodward, OK, 73801.

49. On information and belief, Deepwater Chemicals designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

50. **Defendant Dynax Corporation ("Dynax")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

51. On information and belief, Dynax entered into the AFFF market on or about 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical stabilizers containing PFOA, and/or its chemical precursors.

52. On information and belief, Dynax designed, manufactured, marketed, distributed, and sold fluorosurfactants and fluorochemical stabilizers containing PFOA, and/or its chemical precursors for use in AFFF products.

53. On information and belief, Chemguard also designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

54. On information and belief, the Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed in the vicinity of Plaintiff's drinking water supply.

iii. The PFC Defendants

55. The term **"PFC Defendants"** refers collectively to AGC Chemicals Americas Inc., Archroma U.S. Inc., ChemDesign Products Inc., Chemicals, Inc., Clariant Corporation, Deepwater Chemicals, Inc., and Nation Ford Chemical Company.

56. **Defendant AGC Chemicals Americas, Inc. ("AGC")** is a corporation organized and existing under the laws of Delaware, having its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, PA 19341.

57. On information and belief, AGC Chemicals Americas, Inc. was formed in 2004 and is a subsidiary of AGC Inc., a foreign corporation organized under the laws of Japan, with its a principal place of business in Tokyo, Japan.

58. AGC manufactures specialty chemicals. It offers glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates.

59. On information and belief, AGC designed, manufactured, marketed, distributed, and sold PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

60. **Defendant Archroma U.S., Inc. ("Archroma")** is a corporation organized and existing under the laws of Delaware, with its a principal place of business at 5435 77 Center Drive, Charlotte, North Carolina 28217.

61. On information and belief, Archroma was formed in 2013 when Clariant Corporation divested its textile chemicals, paper specialties, and emulsions business to SK Capital Partners.

62. On information and belief, Archroma designed, manufactured, marketed, distributed, and sold PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

63. **Defendant Chemicals, Inc. ("Chemicals, Inc.")** is a corporation organized and existing under the laws of Texas, with its principal place of business located at 12321 Hatcherville, Baytown, TX 77520.

64. On information and belief, Chemicals, Inc. supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

65. **Defendant Clariant Corporation ("Clariant")** is a corporation organized and existing under the laws of New York, with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

66. On information and belief, Clariant is the successor in interest to the specialty chemicals business of Sandoz Chemical Corporation ("Sandoz"). On information and belief, Sandoz spun off its specialty chemicals business to form Clariant in 1995.

67. On information and belief, Clariant supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

68. **Defendant Nation Ford Chemical Co. ("Nation Ford")** is a corporation organized and existing under the laws of South Carolina, with its principal place of business located at 2300 Banks Street, Fort Mill, SC 29715.

69. On information and belief, Nation Ford supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

70. On information and belief, ChemDesign and Deepwater Chemicals also supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

71. On information and belief, the PFC Defendants supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed in the vicinity of Plaintiff's drinking water supply.

iv. Doe Defendants 1-20

72. Doe Defendants 1-20 are unidentified entities or persons whose names are presently unknown and whose actions, activities, omissions (a) may have permitted, caused and/or contributed to the contamination of Plaintiff's water sources or supply wells; or (b) may be vicariously responsible for entities or persons who permitted, caused and/or contributed to the contamination of Plaintiff's water sources or supply wells; or (c) may be successors in interest to entities or persons who permitted, caused and/or permitted , contributed to the contamination of Plaintiff's water sources or supply wells. After reasonable search and investigation to ascertain the Doe Defendants actual names, the Doe Defendants' actual identities are unknown to Plaintiff as they are not linked with any of the Defendants on any public source.

73. The Doe Defendants 1-20 either in their own capacity or through a party they are liable for: (1) designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOA, and/or its chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or PFCs contained in AFFF/Component Products; or (2) used, handled, transported, stored, discharged, disposed of, designed, manufactured, marketed, distributed, and/or sold PFOA, and/or its chemical precursors, or other non-AFFF products containing PFOA, and/or its chemical precursors; or (3) failed to timely

perform necessary and reasonable response and remedial measures to releases of PFOA, and/or its chemical precursors, or other non-AFFF products containing PFOA, and/or its chemical precursors in to the environment in which Plaintiff's water supplies and well exist.

74. All Defendants, at all times material herein, acted by and through their respective agents, servants, officers and employees, actual or ostensible, who then and there were acting within the course and scope of their actual or apparent agency, authority or duties. Defendants are liable based on such activities, directly and vicariously.

75. Defendants represent all or substantially all of the market for AFFF/Component Products used in the vicinity of Plaintiff's drinking water supply.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

### A. PFOA and Its Risk to Public Health

76. PFAS are chemical compounds containing fluorine and carbon. These substances have been used for decades in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water. These substances are not naturally occurring and must be manufactured.

77. PFOA is one of the two most widely studied types of these PFAS substances.

78. PFOA has unique properties that causes it to be: (i) mobile and persistent, meaning that it readily spreads into the environment where it breaks down very slowly; (ii) bioaccumulative and biomagnifying, meaning that it tends to accumulate in organisms and up the food chain; and (iii) toxic, meaning that it poses serious health risks to humans and animals.

79. PFOA easily dissolves in water, and thus it is mobile and easily spreads in the environment. PFOA also readily contaminates soils and leaches from the soil into groundwater, where it can travel significant distances.

80. PFOA is characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, PFOA is thermally, chemically, and biologically stable. It resists degradation due to light, water, and biological processes.

81. Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

82. PFOA bioaccumulates/biomagnifies in numerous ways. First, it is relatively stable once ingested, so that it bioaccumulates in individual organisms for significant periods of time. Because of this stability, any newly ingested PFOA will be added to any PFOA already present. In humans, PFOA remains in the body for years.

83. PFOA biomagnifies up the food chain. This occurs, for example, when humans eat fish that have ingested PFOA.

84. The chemical structure of PFOA makes it resistant to breakdown or environmental degradation. As a result, it is persistent when released into the environment.

85. Exposure to PFAS is toxic and poses serious health risks to humans and animals.

86. PFAS are readily absorbed after consumption or inhalation and accumulate primarily in the bloodstream, kidney, and liver.

**B. Defendants' Manufacture and Sale of AFFF/Component Products**

87. AFFF is a type of water-based foam that was first developed in the 1970s to extinguish hydrocarbon fuel-based fires.

88. AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

89. AFFF is synthetically formed by combining fluorine-free hydrocarbon foaming agents with fluorosurfactants. When mixed with water, the resulting solution produces an aqueous film that spreads across the surface of hydrocarbon fuel. This film provides fire extinguishment and is the source of the designation aqueous film-forming foam.

90. Beginning in the 1970s, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing either PFOA, or the chemical precursors that degrade into PFOA.

91. AFFF can be made without the fluorosurfactants that contain PFOA and/or its precursor chemicals. Fluorine-free firefighting foams, for instance, do not release PFOA and/or its precursor chemicals into the environment.

92. AFFF that contains fluorosurfactants, however, is better at extinguishing hydrocarbon fuel-based fires due to their surface-tension lowering properties, essentially smothering the fire and starving it of oxygen.

93. The fluorosurfactants used in other AFFF products sold by the AFFF Defendants were manufactured by the Fluorosurfactant Defendants through the process of telomerization.

94. The PFCs the Fluorosurfactant Defendants needed to manufacture those fluorosurfactants contained PFOA, and/or its chemical precursors and were designed, manufactured, marketed, distributed and/or sold by the PFC Defendants.

95. On information and belief, the PFC and Fluorosurfactant Defendants were aware that the PFCs and fluorosurfactants they designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products designed, manufactured, marketed, distributed, and/or sold by the AFFF Defendants.

96. On information and belief, the PFC and Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and/or sold the PFC and/or fluorosurfactants contained in the AFFF products discharged into the environment during fire protection, training, and response activities conducted in the vicinity of Plaintiff's drinking water supply, resulting in widespread PFAS contamination.

97. On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products discharged into the environment during fire protection, training, and response activities conducted in the vicinity of Plaintiff's drinking water supply, resulting in widespread PFAS contamination.

**C. Defendants' Knowledge of the Threats to Public Health and the Environment Posed by PFOA**

98. On information and belief, by at least the 1970s Defendants knew or should have known that PFOA is mobile and persistent, bioaccumulative and biomagnifying, and toxic.

99. On information and belief, Defendants concealed from the public and government agencies its knowledge of the threats to public health and the environment posed by PFOA.

100. Some or all of the Defendants understood how stable the fluorinated surfactants used in AFFF are when released into the environment from their first sale to a customer, yet they failed to warn their customers or provide reasonable instruction on how to manage wastes generated from their products.

101. AFFF was first developed in the 1960s as a result of the U.S. Navy's research into the use of fluorosurfactants in firefighting foam to extinguish fuel-based shipboard fires.

102. In 1969, the Navy promulgated a military standard or "MilSpec" requiring contractors to use "fluorocarbon surfactants" in firefighting foam products. Since then, the Navy has revised this MilSpec multiple times, but at no time did the Navy specify the specific

fluorosurfactants to be used in AFFF. The AFFF MilSpec was a "performance specification," meaning that the product manufacturers were given great flexibility with respect to designing a product that would meet the military's performance requirements.

103. Firefighting foam can be made without the fluorosurfactants that contain PFOA and/or its precursor chemicals.

104. When the Navy first promulgated the AFFF MilSpec, hundreds of different fluorosurfactants had already been created.

105. The AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing either PFOA or the chemical precursors that degrade into PFOA.

106. The AFFF Defendants utilized PFAS produced by a process, called fluorotelomerization. These fluorotelomer AFFF formulations were produced beginning in the 1970s. Although they are not made with PFOA, they contain precursors—polyfluorinated compounds that are known to degrade to compounds that include PFOA.

107. On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products discharged into the environment during fire protection, training, and response activities conducted in the vicinity of Plaintiff's drinking water supply, resulting in widespread PFAS contamination.

108. The AFFF Defendants treated their foam formulations as proprietary information and did not disclose the specific chemical ingredients of their formulations to government agencies or the public.

109. Some or all of the Defendants understood how stable the fluorinated surfactants used in AFFF are when released into the environment from their first sale to a customer, yet they

failed to warn their customers or provide reasonable instruction on how to manage wastes generated from their products.

### D. The Impact of PFOA on the Environment and Human Health Is Finally Revealed

110. Once the truth about PFOA was revealed, researchers began to study the environmental and health effects associated with them, including a "C8 Science Panel".

111. The C8 panel consisted of three epidemiologists specifically tasked with determining whether there was a probable link between PFOA exposure and human diseases. In 2012, the panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy-induced hypertension (including preeclampsia), and hypercholesterolemia.

112. In laboratory testing on animals, PFOA has caused the growth of tumors, changed hormone levels, and affected the function of the liver, thyroid, pancreas, and immune system.

113. The injuries caused by PFAS can arise months or years after exposure.

114. Even after the C8 Science Panel publicly announced that human exposure to 50 parts per trillion, or more, of PFOA in drinking water for one year or longer had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFOA in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind.

115. Furthermore, Defendants have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent

C8 Science Panel was inadequate to satisfy the standards of Defendants to prove such adverse effects upon and/or any risk to humans with respect to PFOA in human blood.

116. At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing the public from discovering the existence and extent of any injuries/harm as alleged herein.

**E. The Fire Fighting Foam Coalition**

117. When telomerization emerged as the dominant manufacturing process for fluorosurfactants, multiple companies seized the opportunity to be part of the lucrative AFFF market.. But the market opportunity presented uncertainties, as it was unclear whether regulators would view the telomer-based AFFF as a hazard. The key question for regulators was whether the telomer-based AFFF would degrade to PFOA once in the environment.

118. Defendants Tyco, Chemguard, Buckeye, and others formed a group called the Fire Fighting Foam Coalition ("FFFC") to protect their business opportunity and advocate for the continued use of telomer-based AFFF. The FFFC declared that it would serve as "a single source for accurate, balanced information on environment related questions" and would "ensure that accurate information about telomer-based products is disseminated in the marketplace."[1] The FFFC made several representations regarding the safety of telomer-based AFFF that were either misleading half-truths or were contrary to Defendants' internal knowledge.

[1] Fact Sheet on AFFF Fire Fighting Agents, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2002-03-FFFC.pdf?_ga=2.136386352.1253861871.1649070681-2123137255.1639662520.

119. For example, the FFFC also told the EPA in 2001 that telomer-based AFFF "does not contain any PFOA-based product."[2] The issue, however, was whether telomer-based AFFF could degrade into PFOA. One company executive admitted in an internal memo that his company's AFFF "will degrade in the environment" to produce PFOA and the "question is how toxic" and how "bioaccumulative" these degraded products are.[3] But contrary to this internal acknowledgment, the FFFC publicly asserted that "telomer based fire fighting foams are not likely to be a source of PFOA in the environment."[4]

120. The EPA appointed a committee known as the Telomer Technical Workgroup to make recommendations to the agency. The president of the FFFC represented the telomer-based AFFF industry on the EPA committee. When, in 2003, the Telomer Technical Workgroup reported its conclusions and recommendations, the FFFC president was the spokesperson.

121. In what the FFFC president called a "major victory" for the industry, the EPA accepted the proposal of its Workgroup that "telomer-based fire fighting foams no longer be considered as part of the PFOA ECA process."[5] The FFFC president remarked that "[w]hen we started this organization two years ago [in 2001], the fate of telomer based AFFF was being tied

---

[2] *Id.* Fact Sheet on AFFF Fire Fighting Agents, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2002-03-FFFC.pdf?_ga=2.136386352.1253861871.1649070681-2123137255.1639662520.

[3] *In Re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2:18-mn-02873-RMG:28, Email chain from John Dowling to Anne Regina re: EPA meeting: Comments (Apr. 18, 2001) attached as an exhibit to Plaintiffs' Omnibus Opposition to Defendants' Motion for Partial Summary Judgment on the Second and Third Prongs of the Government Contractor Immunity Defense, ECF 2409-112.

[4] PFOA ECA Plenary Meeting, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

[5] *Id.* PFOA ECA Plenary Meeting, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

directly to the fate of PFOA and the EPA had just told the military to start searching for alternatives to AFFF."[6] The telomer-based AFFF Defendants had successfully forestalled government restrictions on their products, thereby prolonging the use of AFFF in the vicinity of Plaintiff's drinking water supply and elsewhere.

122. The fluorochemicals the Fluorosurfactant Defendants needed to manufacture those fluorosurfactants PFOA and/or its chemical precursors and were designed, manufactured, marketed, distributed and/or sold by the PFC Defendants.

123. On information and belief, the PFC and Fluorosurfactant Defendants were aware that the fluorochemicals and fluorosurfactants they designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products designed, manufactured, marketed, distributed, and/or sold by the AFFF Defendants.

124. On information and belief, the PFC and Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and/or sold the fluorochemicals and/or fluorosurfactants contained in the AFFF products discharged into the environment during fire protection, training, and response activities conducted in the vicinity of Plaintiff's drinking water supply, resulting in widespread PFAS contamination.

**F. Federal, State, and International Government Agencies Call for Monitoring and Cleanup of PFAS Contamination**

125. On May 2, 2012, the EPA published its Third Unregulated Contaminant Monitoring Rule ("UCMR3"), requiring public water systems nationwide to monitor for thirty contaminants of concern between 2013 and 2015, including PFOA.[7]

---

[6] *Id.* PFOA ECA Plenary Meeting, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

[7] *Revisions to the Unregulated Contaminant Monitoring Regulation (UCMR 3) for Public Water Systems,*

126. In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFAS's)," scientists and other professionals from a variety of disciplines, concerned about the production and release into the environment of PFOA, called for greater regulation, restrictions, limits on the manufacture and handling of any PFOA containing product, and to develop safe non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.[8]

127. On May 25, 2016, the EPA released a lifetime health advisory level (HAL) for drinking water and health effects support documents for PFOA and another type of long-chain PFAS, perfluorooctane sulfonate ("PFOS").[9] The EPA developed the HAL to assist governmental officials in protecting public health when PFOS and PFOA are present in drinking water. The EPA HAL identified the concentration of PFOS and PFOA in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure at 0.07 ppb or 70 ppt. The HAL was based on peer-reviewed studies of the effects of PFOS and PFOA on laboratory animals (rats and mice) and was also informed by epidemiological studies of human populations exposed to PFOS. These studies indicated that exposure to PFOS and PFOA over the HAL could result in adverse health effects, including:

a. Developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations);

b. Cancer (testicular and kidney);

---

77 Fed. Reg: 26072 (May 2, 2012).

[8] Blum A, Balan SA, Scheringer M, Trier X, Goldenman G, Cousins IT, Diamond M, Fletcher T, Higgins C, Lindeman AE, Peaslee G, de Voogt P, Wang Z, Weber R. 2015. The Madrid statement on poly- and perfluoroalkyl substances (PFASs). Environ Health Perspect 123:A107–A111; http://dx.doi.org/10.1289/ehp.1509934.

[9] *See* Fed. Register, Vol. 81, No. 101, May 25, 2016, Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate.

c. Liver effects (tissue damage);

d. Immune effects (e.g., antibody production and immunity);

e. Thyroid disease and other effects (e.g., cholesterol changes).

128. In 2016, the National Toxicology Program of the United States Department of Health and Human Services ("NTP") and the International Agency for Research on Cancer ("IARC") both released extensive analyses of the expanding body of research regarding the adverse effects of PFCs. The NTP concluded that both PFOA and PFOS are "presumed to be an immune hazard to humans" based on a "consistent pattern of findings" of adverse immune effects in human (epidemiology) studies and "high confidence" that PFOA and PFOS exposure was associated with suppression of immune responses in animal (toxicology) studies.[10]

129. IARC similarly concluded that there is "evidence" of "the carcinogenicity of . . . PFOA" in humans and in experimental animals, meaning that "[a] positive association has been observed between exposure to the agent and cancer for which a causal interpretation is . . . credible."[11]

130. California has listed PFOA and PFOS in its Proposition 65 list as a chemical known to cause reproductive toxicity under the Safe Drinking Water and Toxic Enforcement Act of 1986.[12]

---

[10] *See* U.S. Dep't of Health and Human Services, Nat'l Toxicology Program, *NTP Monograph: Immunotoxicity Associated with Exposure to Perfluorooctanoic Acid or Perfluorooctane Sulfonate* (Sept. 2016), at 1, 17, 19, *available at* https://ntp.niehs.nih.gov/ntp/ohat/pfoa_pfos/pfoa_pfosmonograph_508.pdf.

[11] *See* Int'l Agency for Research on Cancer, IARC Monographs: *Some Chemicals Used as Solvents and in Polymer Manufacture* (Dec. 2016), at 27, 97, *available at* http://monographs.iarc.fr/ENG/Monographs/vol110/mono110.pdf.

[12] California Office of Environmental Health Hazard Assessment, *Chemicals Listed Effective Nov. 10, 2017 as Known to the State of California to Cause Reproductive Toxicity: Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)*, Nov. 9, 2017, *available at* https://oehha.ca.gov/proposition-65/crnr/chemicals-listed-effective-november-10-2017-known-state-

131. The United States Senate and House of Representatives passed the National Defense Authorization Act in November 2017, which included $42 million to remediate PFC contamination from military bases, as well as devoting $7 million toward the Investing in Testing Act, which authorizes the Center for Disease Control and Prevention ("CDC") to conduct a study into the long-term health effects of PFOA and PFOS exposure.[13] The legislation also required that the Department of Defense submit a report on the status of developing a new military specification for AFFF that did not contain PFOS or PFOA.[14]

132. In June 2018, the Agency for Toxic Substances and Disease Registry ("ATSDR") and EPA released a draft toxicological profile for PFOS and PFOA and recommended the drinking water advisory levels be lowered to 11 ppt for PFOA and 7 ppt for PFOS.[15]

133. In December 2019, the United States Senate and House of Representatives passed the National Defense Authorization Act for Fiscal Year 2020 ("FY 2020 NDAA"), which introduced new prohibitions on the use of PFAS-containing AFFF for land-based applications.[16] Section 322 of the Act introduced a timeline for the phasing out of AFFF use by the military, including by requiring the Secretary of the Navy to publish a new military specification for a fluorine-free fire-fighting agent for use at all military installations by January 31, 2023. Section 322(b) and (c) then provide that Department of Defense organizations will no longer be authorized

california-cause.

[13] National Defense Authorization Act for Fiscal Year 2018, H.R. 2810, 115th Congress (2017), *available at* https://www.congress.gov/115/plaws/publ91/PLAW-115publ91.pdf.

[14] *Id.*; *see also* U.S. Department of Defense, *Alternatives to Aqueous Film Forming Foam Report to Congress*, June 2018, *available at* https://www.denix.osd.mil/derp/home/documents/alternatives-to-aqueous-film-forming-foam-report-to-congress/.

[15] ATSDR, *Toxicological Profile for Perfluoroalkyls: Draft for Public Comment* (June 2018), *available at* https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf.

[16] National Defense Authorization Act for Fiscal Year 2020, S. 1790, 116th Congress (2019), *available at* https://www.govinfo.gov/content/pkg/BILLS-116s1790enr/pdf/BILLS-116s1790enr.pdf.

to purchase AFFF containing more than 1 part per billion of PFAS after October 1, 2023, and that after October 1, 2024, this prohibition will extend to the use of any PFAS-containing AFFF at any military installation.

134. On February 20, 2020, the EPA announced a proposed decision to regulate PFOA and PFOS under the Safe Drinking Water Act, which the agency characterized as a "key milestone" in its efforts to "help communities address per- and polyfluoroalkyl substances (PFAS) nationwide."[17] Following a public comment period on its proposed decision, the EPA will decide whether to move forward with the process of establishing a national primary drinking water regulation for PFOA and PFOS.

135. On June 15, 2022, the EPA released new drinking water health advisory levels (HALs) for four PFAS, including new interim HALs for PFOS and PFOA that departed significantly from the 2016 EPA HAL they replaced.[18] Specifically, EPA issued HALs of 0.004 ppt for PFOA and 0.02 ppt for PFOS,[19] which collectively accounted for only a small fraction of the combined 70 ppt HAL that preceded them. Importantly, EPA set these interim HALs at levels below which PFOS and PFOA can be measured using current analytic methods, meaning that the mere detection of PFOS or PFOA in a water provider's system would be sufficient on its own to exceed the new levels.

136. As support for its decision, EPA explained that the science had evolved since 2016 and that the new interim HALs for PFOS and PFOA were "based on human studies" that "found

---

[17] Press Release, *EPA Announces Proposed Decision to Regulate PFOA and PFOS in Drinking Water*, Feb. 20, 2020, *available at* https://www.epa.gov/newsreleases/epa-announces-proposed-decision-regulate-pfoa-and-pfos-drinking-water.

[18] *See* Fed. Register, Vol. 87, No. 36848, June 21, 2022, Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances.

[19] *Id.* Fed. Register, Vol. 87, No. 36848, June 21, 2022, Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances.

associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, human development (e.g., decreased birth weight), and cancer."[20] Specifically, EPA had performed updated health effects analyses for PFOS and PFOA to provide support for the drinking water regulations the agency planned to adopt for the two chemicals under the SDWA. Based on these analyses, EPA concluded that "the levels at which negative health effects could occur are much lower than previously understood when EPA issued the 2016 health advisories for PFOA and PFOS – including near zero for certain health effects."[21] For this reason, the agency determined there was a "pressing need to provide updated information on the current best available science to public health officials prior to finalization of the health effects assessment."[22]

137. Because the referenced health analyses are still undergoing final review by EPA's Science Advisory Board, the agency has stated that the new interim HALs for PFOS and PFOA are subject to change. EPA has indicated, however, that it does not anticipate any changes resulting

[20] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Communities* at 1-2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-communities.pdf.

[21] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.

[22] EPA Office of Water, EPA Doc. No. 822-R-22-003, *INTERIM Drinking Water Health Advisory: Perfluorooctanoic Acid (PFOA) CASRN 335-67-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfoa-2022.pdf; EPA Office of Water, EPA Doc. No. 822-R-22-004, *INTERIM Drinking Water Health Advisory: CASRN 1763-23-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfos-2022.pdf.

in revised HALs for PFOS and PFOA that are greater than the 4 ppt minimum reporting level[23] that applies to Public Water Systems.[24]

138. On September 6, 2022, EPA published a notice of proposed rulemaking seeking public comment on its plan to designate PFOS and PFOA as hazardous substances under CERCLA.[25] Pursuant to that notice, all comments from the public must be submitted by November 7, 2022.

139. On October 5, 2022, the Governor of New York signed legislation (S.8763A/A.9824A) allowing public water suppliers to revive any action, civil claim, or cause of action involving an emerging contaminant in drinking water that may have been barred because the statute of limitations had expired.

140. The legislation defines an emerging contaminant as any physical, chemical, microbiological, or radiological substance that is identified or listed as an emerging contaminant in public health or any other law, which would include the PFAS chemicals at issue in this action.

141. The law gives local water authorities until April 5, 2024, to pursue actions against polluters to recover the costs of treatment and filtration as a result of contamination that might otherwise be barred under the statute of limitations.

142. On January 6, 2023, the Defense Logistics Agency within the Department of Defense published a new Military Specification for "Fire Extinguishing Agent, Fluorine-Free

[23] As EPA's website explains, the Minimum Reporting Level ("MRL") for Unregulated Contaminant Monitoring Rule (UCMR) 5 is the minimum quantitation level that, with 95 percent confidence, can be achieved by capable analysts at 75 percent or more of the laboratories using a specified analytical method. The MRLs in EPA's chart are based on the UCMR 5 requirement to use EPA Method 533.

[24] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.

[25] *See* Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 87 Fed. Reg. 54415 (Sep. 6, 2022).

Foam (F3) Liquid Concentrate, for Land-Based, Fresh Water Application," MIL-PRF-32725 ("F3 MilSpec") in accordance with § 332(a)(1) of the FY 2020 NDAA.[26] This new specification will govern fire extinguishing foams used by all Department of Defense organizations and will require such foams to test "non-detect" for PFAS. The specification further requires manufacturers to "certify in writing that PFAS has not intentionally been added to the concentrate."

**G. Contamination of Plaintiff's Water System Caused by the Use of AFFF**

143. Plaintiff is the owner and operator of a water system serving approximately 90 residents located in and around Lake Placid, NY.

144. Plaintiff's system draws the drinking water it provides to customers from two groundwater wells.

145. Plaintiff has detected PFAS in its groundwater wells.

146. On information and belief, the PFAS contamination described above is a direct and proximate result of fire protection, training, and response activities in the area near Plaintiff's water system, resulting in the migration of PFAS into Plaintiff's water supply.

147. In order to ensure that it can continue to provide clean and safe water to residences, Plaintiff has and will continue to take actions to address the above contamination of its property and its potable water supply caused by the Defendants.

148. Such actions include but are not limited to additional testing and monitoring for PFAS; planning, designing, purchasing, installing, and maintaining water filtration systems to remove these chemicals; infrastructure modifications; contingency planning; and community outreach.

[26] Available on the Defense Logistics Agency's website, https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=285047.

149. Due to the persistent and long-term nature of PFAS contamination, Plaintiff is expected to suffer damages and incur the costs associated with these and other ongoing necessary remedial actions for many years to come.

150. Through this action, Plaintiff seeks compensatory damages for the harm done to its property and the costs associated with investigating, remediating, and monitoring its drinking water supplies contaminated with PFAS due to the use of AFFF in the area near Plaintiff's water system.

**H. AFFF Containing PFOA Is Fungible and Commingled in the Groundwater**

151. AFFF containing PFOA, once it has been released to the environment, lacks characteristics that would enable identification of the company that manufactured that particular batch of AFFF or chemical feedstock.

152. A subsurface plume, even if it comes from a single location, such as a retention pond or fire training area, originates from mixed batches of AFFF and chemical feedstock coming from different manufacturers.

153. Because precise identification of the specific manufacturer of any given AFFF/Component Product that was a source of the PFAS found in Plaintiff's drinking water supply is nearly impossible, given certain exceptions, Plaintiff must pursue all Defendants, jointly and severally.

154. Defendants are also jointly and severally liable because they conspired to conceal the true toxic nature of PFOA, to profit from the use of AFFF/Component Products containing PFOA, at Plaintiff's expense, and to attempt to avoid liability.

## MARKET SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, AND ENTERPRISE LIABILITY

155. Defendants in this action are manufacturers that control a substantial share of the market for AFFF/Component Products containing PFOA, and/or its chemical precursors in the United States and are jointly responsible for the contamination of Plaintiff's property, including the soil, sediment, surface water, and groundwater. Market share liability attaches to all Defendants and the liability of each should be assigned according to its percentage of the market for AFFF/Component Products at issue in this Complaint.

156. Because PFAS is fungible, it is impossible to identify the exact Defendant who manufactured any given AFFF/Component Product containing PFOA, and/or its chemical precursors found free in the air, soil or groundwater, and each of these Defendants participated in a territory-wide and U.S. national market for AFFF/Component Products during the relevant time.

157. Concert of action liability attaches to all Defendants, each of which participated in a common plan to commit the torts alleged herein and each of which acted tortuously in pursuance of the common plan to knowingly manufacture and sell inherently dangerous AFFF/Component Products containing PFOA, and/or its chemical precursors.

158. Enterprise liability attaches to all the named Defendants for casting defective products into the stream of commerce.

## CAUSES OF ACTION

### COUNT I: DEFECTIVE DESIGN

159. Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 158 above, and further alleges the following:

160. As manufacturers of AFFF/Component Products containing PFOA, and/or its chemical precursors, Defendants owed a duty to all persons whom its products might foreseeably

harm, including Plaintiff, and not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

161. Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a. PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

b. Even at extremely low levels, PFAS render drinking water unfit for consumption;

c. PFAS poses significant threats to public health; and

d. PFAS create real and potential environmental damage.

162. Defendants knew of these risks and failed to use reasonable care in the design of their AFFF/Component Products.

163. AFFF containing PFOA, and/or its chemical precursors poses a greater danger to the environment and to human health than would be expected by ordinary persons such as Plaintiff and the general public.

164. At all times, Defendants were capable of making AFFF/Component Products that did not contain PFOA, and/or its chemical precursors. Thus, reasonable alternative designs existed which were capable of preventing Plaintiff's injuries.

165. The risks posed by AFFF containing PFOA, and/or its chemical precursors far outweigh the products' utility as a flame-control product.

166. The likelihood that Defendants' AFFF/Component Products would be spilled, discharged, disposed of, or released into the environment and contaminate Plaintiff's drinking water supply far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

167. As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of AFFF/Component Products containing PFOA, and/or its chemical precursors, Plaintiff's property and water system has become contaminated with PFAS.

168. Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiff's property and water system. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's health and safety, and/or property rights.

**COUNT II:**
**FAILURE TO WARN**

169. Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 168 above, and further allegesthe following:

170. As manufacturers of AFFF/Component Products containing PFOA, and/or its chemical precursors, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiff and the public.

171. Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a. PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

b. Even at extremely low levels, PFAS render drinking water unfit for consumption;

c. PFAS poses significant threats to public health; and

d. PFAS create real and potential environmental damage.

172. Defendants knew of the health and environmental risks associated with their AFFF/Component Products, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with their products or an instruction that would have avoided Plaintiff's injuries.

173. Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of their AFFF/Component Products in the vicinity of drinking water supplies, including PFAS contamination of public drinking supplies and private wells, Defendants failed to issue any warnings, instructions, recalls, or advice regarding their AFFF/Component Products to Plaintiff, governmental agencies or the public.

174. As a direct and proximate result of Defendants' failure to warn, Plaintiff's property and water system has become contaminated with PFAS.

175. Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiff's property and water system. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's health and safety, and/or property rights.

## COUNT III:
## NEGLIGENCE

176. Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 175 above, and further allegesthe following:

177. As manufacturers of AFFF/Component Products containing PFOA, and/or its chemical precursors, Defendants owed a duty to Plaintiff and to all persons whom its products might foreseeably harm and to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

178. Defendants owed a duty to Plaintiff to act reasonably and not place inherently dangerous AFFF/Component Products into the marketplace when its release into the air, soil, and water was imminent and certain.

179. Defendants knew or should have known that PFAS were leaching from AFFF used for fire protection, training, and response activities.

180. Defendants knew or should have known that PFAS are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released into the environment.

181. Defendants knew or should have known that the manner in which they were designing, manufacturing, marketing, distributing, and selling their AFFF/Component Products would result in contamination of Plaintiff's property and water system with PFAS.

182. Despite the fact that Defendants knew or should have known that PFAS are toxic, can contaminate water resources and are carcinogenic, Defendants negligently:

a. designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold AFFF/Component Products containing PFOA, and/or its chemical precursors;

b. issued deficient instructions on how their AFFF/Component Products should be used and disposed of, thereby permitting PFAS to contaminate the groundwater in and around Plaintiff's drinking water supply;

c. failed to recall and/or warn the users of their AFFF/Component Products of the dangers of groundwater contamination as a result of standard use and disposal of their products;

d. failed and refused to issue the appropriate warning and/or recalls to the users of their AFFF/Component Products; and

e. failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

183. The magnitude of the burden on the Defendants to guard against this foreseeable harm to Plaintiff was minimal, as the practical consequences of placing this burden on the Defendants amounted to a burden to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products.

184. As manufacturers, Defendants were in the best position to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products, and to take steps to eliminate, correct, or remedy any contamination they caused.

185. As a direct and proximate result of Defendants' negligence, Plaintiff's property and water system have become contaminated with PFAS.

186. Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiff's property and water system. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's health and safety, and/or property rights.

**COUNT IV:**
**PUBLIC NUISANCE**

187. Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 186 above, and further allegesthe following:

188. Plaintiff provides drinking water to its residents to from its groundwater supply wells that is used for drinking, bathing, cleaning, washing, cooking, water vegetables, and other uses.

189. Because Plaintiff is a public entity, the water it provides to its residential and commercial customers is a public and commonly held resource. Members of the public have a right to have their water remain clean, safe, and free of Defendants' toxic contamination.

190. Defendants' acts and omissions, including their manufacture, sale, supply, marketing, and defective design of, and/or failure to warn regarding PFOA and/or in its AFFF/Component Products, contaminated Plaintiff's wells, rendering water served from them unfit for human consumption and a public health hazard.

191. Consequently, Defendants substantially interfered with and caused damage to a public or common resource that endangered public property, as well as the health, safety, and comfort of a considerable number of persons. Such action creates, contributes to, or maintains a public nuisance.

192. As an owner of water production wells and purveyor of drinking water, Plaintiff suffers injuries different in kind from the community at large because it relies entirely upon its water production wells for its public service functions.

193. Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA contamination of the groundwater supply. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF/Component Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore,

Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

194. Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

**COUNT V:**
**PRIVATE NUISANCE**

195. Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 194 above, and further allegesthe following:

196. Plaintiff is the owner of land, easements, and water rights that permit it to extract groundwater for use in its wells to provide drinking water to its customers.

197. Defendants' intentional, negligent, and/or reckless conduct, as alleged herein, has resulted in substantial contamination of Plaintiff's supply Wells by PFOA, human carcinogens that cause adverse human health effects and render water undrinkable.

198. Defendants' manufacture, distribution, sale, supply, and marketing of AFFF/Component Products containing PFOA was unreasonable because Defendants had knowledge of PFOA's unique and dangerous chemical properties and knew that contamination of public groundwater supply wells was substantially certain to occur, but failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

199. The contamination caused, contributed to, and/or maintained by Defendants substantially and unreasonably interferes with Plaintiff's property rights to appropriate, use, and enjoy water from its wells.

200. Each defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

201. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFOA contamination of its wells in an amount to be proved at trial.

202. Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA contamination of Plaintiff's groundwater supply. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF/Component Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

203. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

204. Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

## COUNT VI: TRESPASS

205. Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 204 above, and further alleges the following:

206. Plaintiff is the owner, operator, and actual possessor of real property and improvements used for collecting drinking water.

207. Defendants designed, manufactured, distributed, marketed, and sold AFFF/Component Products with the actual knowledge and/or substantial certainty that AFFF containing PFOA, and/or its chemical precursors would, through normal use, release PFAS that would migrate into groundwater, causing contamination.

208. Defendants negligently, recklessly, and/or intentionally designed, manufactured, distributed, marketed, and sold AFFF/Component Products in a manner that caused PFAS to contaminate Plaintiff's property.

209. As a direct and proximate result of Defendants' trespass, Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation, and monitoring costs.

210. Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

**COUNT VIII:**
**PUNITIVE DAMAGES**

211. Plaintiff adopts, realleges, and incorporates each and every allegation in the paragraphs 1 through 210 above, and further alleges the following:

212. Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing damage upon Plaintiff, disregarding their protected rights.

213. Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFAS would not be released into the environment and inevitably contaminate Plaintiff's property and water supply.

214. Defendants have caused great harm to Plaintiff, acting with implied malice and an outrageously conscious disregard for Plaintiff's rights and safety, such that the imposition of punitive damages is warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

a. compensatory damages according to proof including, but not limited to:

   i. costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent to which Plaintiff's property and water system have been contaminated with PFAS;

   ii. costs and expenses related to past, present, and future treatment and remediation of the PFAS contamination impacting Plaintiff's property and water system; and

   iii. costs and expenses related to past, present, and future installation and maintenance of filtration systems to assess and evaluate PFAS contamination impacting Plaintiff's property and water system;

b. a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety of Plaintiff;

c. an order for an award of attorney fees and costs, as provided by law;

d. pre-judgment and post-judgment interest as provided by law;

e. an award of punitive damages in an amount sufficient to deter Defendants' similar wrongful conduct in the future;

f. an award of consequential damages; and

g. an order for all such other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, BIRCH PARK LLC UTILITIES, demands a trial by jury of all issues so triable as a matter of right.

Dated: New York, New York
September 16, 2024

Respectfully submitted,

**NAPOLI SHKOLNIK**

By: */s/ Andrew W. Croner*
Andrew Croner, Esq.
Patrick Lanciotti, Esq.
Nicholas Mindicino, Esq.
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
acroner@napolilaw.com
planciotti@napolilaw.com
nmindicino@napolilaw.com

Paul J. Napoli, Esq.
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com